THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST PUGH, JR., Defendant-Appellant.

Second District   No. 75-503

Opinion filed June 15, 1977.—Rehearing denied July 5, 1977.

Ralph Ruebner and J. Daniel Stewart, both of State Appellate Defender's Office, of Elgin, for appellant.

John J. Bowman, State's Attorney, of Wheaton (S. Keith Lewis and Malcolm F. Smith, Assistant State's Attorneys, and Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant, Ernest H. Pugh, Jr., after a mistrial because of a hung jury, was retried and convicted of two counts of deviate sexual assault and sentenced to two concurrent sentences of 15-20 years in prison. On appeal defendant raises eight issues:

1. Was the defendant denied a fair trial because the trial court sustained a State objection to defendant's closing arguments summarizing the evidence of impeachment of the alleged victim;

2. Was the defendant denied a fair opportunity to present his defense and thereby denied due process of law because the trial court excluded a defendant's witness from testifying solely because she had married and changed her name from that provided the State in discovery;

3. Was the defendant denied a fair trial because of the prejudicial closing argument of the prosecution, who called the defendant's alleged conduct "below the category of being an animal";

4. Should the hair and blood samples taken from the defendant have been suppressed because there had been no notice to his attorney, as required by the Illinois discovery rules;

5. Was the defendant entitled to an evidentiary hearing on the allegations in his motion for a new trial that there had been prejudicial communications with the jury;

6. Was the defendant improperly convicted of two counts of deviate sexual assault arising from one transaction;

7. Did the trial court exceed its authority in ordering that the defendant would not receive sentence credit for the 19 months he spent in custody in the county jail; and

8. Are the defendant's sentences of 15-20 years excessive.

The record reveals that on January 7, 1974, between 8:45 and 9:30 p.m., a man wearing an overcoat, described by the victim as black and white with a fur collar, and grey and maroon pants, at gunpoint forced the store manager of the 7-Eleven Food Store in Villa Park, Illinois, to disrobe in the backroom of the store and commit different deviate sexual acts with him. The man threatened the victim that if she did not keep her mouth shut he would kill her. Immediately after the attack the victim telephoned a co-worker for assistance and promptly reported the attack to her. The co-worker immediately contacted the police. A customer of the store testified that shortly after the attack he was asked by the victim to stay with her. He testified that shortly thereafter a car pulled into the store parking lot and to the right side of the building and he took the license number of the car and gave it to the police. The police found that the defendant owned the car that was in the store lot by running a registration check on the automobile's license plate. They went to the defendant's apartment and knocked. No one answered but they observed the defendant's vehicle in the parking lot. The police kept the vehicle under surveillance. A short time later the defendant entered his vehicle and drove away. The police tried to stop the defendant but he fled. The police chased the defendant with their Mars lights operating on their marked squad cars down several streets, finally apprehending the defendant after his car hit another automobile, a traffic signal, knocked down a light pole and crashed into a shed. When the defendant was captured he was wearing a grey coat with an imitation fur collar and maroon or burgundy trousers with a diamond insignia. Inside the car a blue steel snubnosed replica of a revolver was found as well as a scarf and stocking cap. On January 10 the victim identified the defendant's photograph from a group of 12 photographs which she viewed at the Villa Park police station. The victim also made an in-court identification of the defendant.

The record reveals that there were at least four customers in the store and parking lot at the time of the incident. The four customers who testified at trial described the individual who walked out of the back room through the store and out the front door as being a white male with similar physical characteristics of the defendant. The customers testified that the individual was wearing an overcoat and rust or maroon colored pants. They were unable to identify the pants the defendant had on as

being, in fact, the pants that the individual who walked out of the back room was wearing.

Dr. Hubert C. Swartout testified that he examined the victim but found no sperm on any of the smears that he took from her. Jacqueline Fracaro, a fingerprint expert, testified that she examined the latent prints found in the back room but was unable to make a positive identification of them. Timothy Dixon, a criminologist, testified that he found traces of seminal material on the victim's pants and that the semen came from a person with group "A" blood type, which the defendant had. Dixon testified that on the left sleeve of the defendant's coat he found a hair similar to the head hair of the victim and dissimilar to the hair of the defendant. Dr. Gary Dosik testified that he examined the victim in the emergency room at the hospital and found a reddening or inflammation of the rectal sphincter muscle. Dr. Dosik testified that any source of irritation could cause slight erythema of the rectal sphincter muscle, including a very vigorous wiping after a normal bowel movement.

The defendant introduced evidence that he had been drinking heavily on the day in question. He admitted being in the 7-Eleven store parking lot for the purpose of buying more beer, however, upon determining that the store had been closed, he left and went to another Convenient shopping mart. He further testified that after acquiring the beer at the other shopping mart, he returned home to do his laundry and to finish drinking the beer. He then proceeded to take a drive to clear his head, at which point the police officers attempted to apprehend him and he fled. His flight ended in an automobile collision and his apprehension at that time. His excuse for fleeing from the police was that he did not want to be arrested for driving while intoxicated.

The jury found the defendant guilty of both counts of deviate sexual assault as alleged in counts I and II of the indictment and the court entered a judgment on the verdicts from which the defendant appeals.

■■   The defendant's first contention is that the defendant was denied a fair trial because the trial court sustained a State objection to defendant's closing argument summarizing evidence of impeachment of the alleged victim. In his closing argument defense counsel contended that the victim was impeached by her alleged inconsistent testimony at the two trials of the defendant concerning where she left her pants and blouse after she was forced to disrobe. The record discloses that the alleged discrepancy in the testimony of the witness was brought out by the defense counsel at the second trial. The State, in its objection to the closing argument, mistakenly stated that this evidence had not been admitted in the second trial and the trial court sustained this objection. Obviously the trial court was in error. Nevertheless, the defense counsel stated, "I won't argue that point." We find that the alleged impeachment which defense counsel was

attempting to argue to the jury was merely impeachment on a minor, unimportant aspect of the case. The defendant did not argue that the victim was not sexually assaulted. There is sufficient evidence in the record to prove that the victim was sexually assaulted. Defendant contends that he was not the party who committed the offense and claims that he never entered that store that night. The relevant issue then is not how the crime was committed but whether the defendant was the party who committed the deviate sexual assault. We therefore fail to see how the victim's somewhat inconsistent statements as to the details involving the sexual assault could be used to impeach her positive identification of the defendant as her attacker. The victim described in rather remarkable detail the somewhat unusual clothing the apparently armed assailant was wearing; a disinterested witness took the license number of the defendant's car at the scene; and when the defendant was arrested later that night he was wearing substantially the clothing described by the victim, to-wit, a grey overcoat with a mouton collar and maroon pants. He had a replica of a snub-nosed revolver in his possession. Furthermore, three days after the attack, when the victim was shown 12 pictures, she immediately identified the defendant as her attacker. These pictures were introduced into evidence at the second trial without objection. The victim also made an in-court identification of the defendant. We find that the identification where the victim observed the defendant for some time in the brightly lighted store, coupled with her immediate, detailed description of her assailant to the police, is more than sufficient to overcome the defendant's denial of having been in the store. The evidence is conclusive that the defendant was the offender. The defendant has failed to prove that the erroneous ruling of the trial court prejudiced him in any manner. Without proof of such prejudice, the error is merely harmless. Thus the trial court's ruling limiting the defense counsel's closing argument, while error, was not reversible error.

■■■ Defendant next contends that he was denied a fair opportunity to present his defense, and thereby denied due process of law because the trial court excluded the defense witness from testifying solely because she had gotten married and changed her name from that provided the State in discovery. The defendant gave notice to the State that he intended to call his stepdaughter as a witness on Monday, June 23, 1975, and she was not called as a witness until Friday, June 27, 1975. The defense counsel gave the State's Attorney the stepdaughter's name as Diane Taylor. He also provided the State's Attorney with her telephone number and address. When the defense counsel gave this to the State's Attorney he asked him if he wanted him to file a formal amendment to the discovery in this particular case and was told that the State's Attorney did not think it was necessary. Unbeknownst to the defense counsel, the stepdaughter had

been married the weekend before trial and, in fact, her name was Diane Taylor Lienhard. When the defendant called the witness to the stand the State's Attorney objected to her testimony. The trial court excluded her testimony as a part of the sanctions provided for under Supreme Court Rule 415(g)(i) (Ill. Rev. Stat. 1975, ch. 110A, par. 415(g)(i)). Defense counsel argues that the exclusion of the witness for failure to comply with the discovery order as provided in Rule 415(g)(i) is unconstitutional and that the defendant's right to compulsory process of witnesses is sacrificed for failure to comply with the procedural rule. Defendant states that use of the exclusion sanction to deny a defense witness from testifying also deprives the defendant, under the facts of this case, of a fair trial as guaranteed by the due process clause of the fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution. Counsel further contends, in the alternative, that the trial court's use of the sanction in this case was arbitrary and an abuse of the discretion.

In the recent case of *People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274, the Fifth District Appellate Court was faced with the same argument. That court, in a very exhaustive discussion of the trial court's discretion and the effect of its decision to exclude the evidence of a defense witness, held that the exclusion in that case was reversible error. In that case defense counsel sought to call a deputy sheriff as a witness for the defense who had accompanied defense counsel to the scene of the shooting the day before he was tendered as a witness. The facts were that a shot had been made through the window injuring the complaining witness. There was only one eye-witness who recognized the defendant through the window. The proposed testimony of the deputy, who was a firearms expert, was that if the defendant had fired the gun close to the window that powder would have been on the sill and a hole the size of a football made in the glass, rather than the small hole that actually occurred. In commenting on the use of sanctions that court held:

"Sanctions are designed to accomplish the purpose of discovery; but it is clear that the imposition of sanctions should not encroach on a fair trial." (43 Ill. App. 3d 283, 286, 356 N.E.2d 1274, 1277.)

We agree with the court in *Rayford* that it was error to exclude that witness. The record in that case clearly proved that that defendant was prejudiced by the exclusion of the testimony of the deputy sheriff. In the case before us the trial court's use of the exclusion rule under Supreme Court Rule 415(g)(i) was clearly an abuse of its discretion. The defense counsel did not know of the change of name and upon discovery of it tendered the information to the State's Attorney in open court. The State's Attorney admits that he received information of where the witness could be contacted several days prior to her being called as a witness. The

conduct of the defense counsel in this case falls far short of the flagrant violations which might justify the use of such a drastic measure as exclusion. We find that the trial court erred in the exclusion of this evidence. However, we note that the sole purpose for the introduction of the testimony of the proposed witness, as admitted in the brief of the Appellate Defender, was to corroborate the admitted testimony of her mother, the defendant's wife, concerning (1) defendant's drinking on the day of the offense to explain why he fled the police, and (2) that the blond hair found on the defendant's coat was that of Diane Taylor Lienhard rather than the victim's, who had the same color hair. We fail to see how the exclusion of this redundant testimony prejudiced the defendant in any manner. For the above reason, we find that while the trial court abused its discretion in excluding the testimony of the witness, it was harmless error beyond a reasonable doubt.

The defendant contends that he was deprived of a fair trial because of the prejudicial closing statement of the prosecutor who described the defendant's alleged conduct as "below the category of being an animal." We note that the comments complained of by the defendant are only two short sentences in a lengthy closing argument where no objection was raised by the defense. In *People v. Elder* (1962), 25 Ill. 2d 612, 615, 186 N.E.2d 27, 29, our supreme court was faced with a similar issue. There the prosecutor described the crimes as "animalistic and unnatural" and referred to the defendant as "an animal." The court held:

> "A prosecutor is entitled to reflect unfavorably on a defendant and to comment on his actions if his remarks are based on pertinent and competent evidence. [Citation.] While this court does not commend the use of invective, statements of counsel based upon facts proved, or on legitimate inferences therefrom, do not transcend the bounds of proper argument. [Citation.] These characterizations were supported by the complaining witness's description of the rape and the accompanying deviate acts. No objections to the allegedly prejudicial argument were interposed in the trial court. We are of the opinion that the remarks were not of such a nature as to require a reversal of the conviction."

In *People v. Weaver* (1972), 7 Ill. App. 3d 1104, 1106, 288 N.E.2d 669, 671, that appellate court was faced with a similar question. There the prosecutor referred to the armed youths at the scene of the crime as "vicious animals," indirectly referring to the defendant as a "vicious animal." The court points out that no objection to the language was raised at trial and states:

> "Such errors, if not properly raised, are deemed to be waived. [Citations.] However, we may still consider the assignment of error if the argument is so erroneously prejudicial as to prevent the

defendant from receiving a fair trial. (*People v. Mackey* (1964), 30 Ill. 2d 190, 195 N.E.2d 636; * * *.) We do not think that the prosecutor's indirect reference to the defendant as a 'vicious animal' is so prejudicial as to have affected the decision of the jury."

See also *People v. Mackins* (1974), 17 Ill. App. 3d 24, 308 N.E.2d 92, where that court discussed the proper analysis to determine whether or not a defendant was denied a fair trial by prejudicial closing arguments, and *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286, and *People v. Delgado* (1975), 30 Ill. App. 3d 890, 333 N.E.2d 633.

■■■ Based on the above cases, we find that the defendant failed to object to the language complained of on appeal in the trial court and therefore any error is deemed to be waived. Furthermore, we find that upon a review of the entire record we cannot hold that this single argument, by itself, was so significant as to constitute prejudicial error, and find the defendant's contention without merit.

■■ The defendant next contends that the trial court erred when it denied defendant's motion to suppress the hair and blood samples taken from the defendant because there was no notice to defendant's attorney as required by the Illinois discovery rules (Ill. Rev. Stat. 1975, ch. 110A, par. 411 *et seq.*). Interestingly we note that the defendant has not argued that he has a constitutional right to counsel at the time of the taking of the samples. In fact the United States Supreme Court in *United States v. Wade* (1967), 388 U.S. 218, 227-28, 18 L. Ed. 2d 1149, 1157-58, 87 S. Ct. 1926, 1932-33, stated that:

"The Government characterizes the lineup as a mere preparatory step in the gathering of the prosecution's evidence, not different—for Sixth Amendment purposes—from various other preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair and the like. We think there are differences * * *. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial."

(See also *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *U.S. v. Ash* (1973), 413 U.S. 300, 37 L. Ed. 2d 619, 93 S. Ct. 2568.)

Thus we are only asked to consider the applicability of the discovery rules to the facts at hand.

Defendant cites Supreme Court Rule 413 (Ill. Rev. Stat. 1975, ch. 110A, par. 413), as authority for its position that the evidence should have been suppressed. Supreme Court Rule 413 reads in pertinent part:

> "(a) The person of the accused. Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, a judicial officer may require the accused, among other things, to:
>
> \* \* \*
>
> (vii) permit the taking of samples of his blood, hair and other materials of his body which involve no unreasonable intrusion thereof;
>
> \* \* \*
>
> (b) Whenever the personal appearance of the accused is required for the foregoing purposes, reasonable notice of the time and place of such appearance shall be given by the State to the accused and his counsel, who shall have the right to be present. Provision may be made for appearances for such purposes in an order admitting the accused to bail or providing for his release."

The State responds that Supreme Court Rule 413 is qualified by Supreme Court Rule 411 (Ill. Rev. Stat. 1975, ch. 110A, par. 411). Rule 411 reads:

> "These rules [discovery rules] shall be applied in all criminal cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary. They shall become applicable following indictment or information and shall not be operative prior to or in the course of any preliminary hearing."

It is the State's position that since neither indictment nor information were pending against the defendant, that Supreme Court Rule 413(b), as qualified by Supreme Court Rule 411, does not apply to the situation at hand. We agree with the State's contention and hold that the Illinois discovery rules do not apply where the defendant has been neither indicted nor information filed.

The defendant next contends that he was entitled to an evidentiary hearing on the allegations in his motion for a new trial that there had been prejudicial communications with the jury. Attached to his motion for a new trial was a letter from John E. Reid & Associates, polygraph examiners, stating that they had examined Jeanette Addison and Cleo C. Martello, both of whom passed a lie detector test in support of their assertion that they were discussing the defendant and his prior record in the presence of a juror in the washroom of the courthouse. The trial court refused to hold an evidentiary hearing on the allegations in the motions and denied the motion.

The defendant argues that *Remmer v. United States* (1954), 347 U.S. 227, 98 L. Ed. 654, 74 S. Ct. 450, is authority for requiring that the trial court must grant a hearing to determine whether or not there have indeed been improper communications with the jury. In that case the improper communications with the jury took the form of a friend of the defendant contacting one of the jurors in an attempt to bribe him. The juror immediately reported to the court. The court and the prosecutor, along with the FBI did a thorough investigation to determine the impropriety of the contact and if it indeed occurred. The defense counsel was not informed of the matter until after the trial, at which point he filed a motion for a new trial accompanied by affidavits reciting the alleged occurrence and stated that if he had known of the incident he would have moved for a mistrial and requested that the juror in question be replaced by an alternate juror. The United States Supreme Court pointed out that they did not know from the record, nor did the petitioner know what actually transpired or whether the incident that may have occurred was harmful or harmless. The Court went on to state,

> "The sending of an FBI agent in the midst of a trial to investigate a juror as to his conduct is bound to impress the juror and is very apt to do so unduly. A juror must feel free to exercise his functions without the FBI or anyone else looking over his shoulder. The integrity of jury proceedings must not be jeopardized by unauthorized invasions." (347 U.S. 227, 229, 98 L. Ed. 654, 656, 74 S. Ct. 450, 451.)

We find this case to be totally distinguishable from the case before us.

■■ In our case the motion for a new trial was supported by a letter from a third party based upon hearsay. There was no police intervention or investigation to intimidate or force the jurors to vote in either direction, and furthermore, there was no allegation that the juror in fact heard the conversation allegedly taking place within the washroom in the courthouse. Finally, as the court in *People v. Gamboa* (1975), 30 Ill. App. 3d 242, 250, 332 N.E.2d 543, 550, specifically pointed out:

> "Alleged errors which appear solely from an affidavit accompanying a motion for a new trial need not be considered. (*City of Chicago v. Quane* (1968), 98 Ill. App. 2d 100, 240 N.E.2d 150.) The affidavit was based on hearsay—information the attorney said he received from Olaguez. *Hearsay is not a sufficient basis for a new trial motion.* (*Smith v. Illinois Valley Ice Cream Co.* (1959), 20 Ill. App. 2d 312, 156 N.E.2d 361; *Wilke v. U.S.* (9th Cir. 1970), 422 F.2d 1298.) The trial court did not err in denying the defendant's motion for an evidentiary hearing." (Emphasis added.)

Similarly in our case, the affidavit is based upon hearsay evidence and as

such it need not be considered. The trial court did not err in denying the defendant's motion for an evidentiary hearing.

The defendant next contends that he was improperly convicted of two counts of deviate sexual assault arising from the same transaction. In the State's brief they acknowledge that the case of *People v. Tate* (1976), 37 Ill. App. 3d 358, 361, 346 N.E.2d 79, 82, is controlling. In that case this court was asked to determine whether an individual who committed two separate acts of deviate sexual assault on one victim could be convicted on two separate charges. This court, in relying on *People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1, and construing the applicable statutory provisions (Ill. Rev. Stat. 1973, ch. 38, pars. 11—2 and 11—3(a)) went on to hold that:

> "The misconduct charged thus represents the two ways in which the statutory offense may be committed. The General Assembly has not seen fit to define what constitutes a single or multiple offense. As the multiple charges in this case clearly arose from a single transaction—there being a single victim, a single location and a single time frame, without any apparent change in motivation—we are constrained to hold the defendant's acts constituted a single offense and the imposition of multiple concurrent sentences was erroneous."

We find that the case of *People v. Tate* is controlling and hold that the trial court should, on remand, strike one of the defendant's convictions for deviate sexual assault and issue an amended mittimus showing only one conviction and one sentence.

The defendant next contends that the trial court exceeded its authority in denying the defendant sentence credit for the 19 months he spent in the county jail prior to his conviction. The defendant was arrested on January 7, 1974, and remained in custody until he was sentenced on August 21, 1975. The judge, in sentencing the defendant, stated:

> "There will be no good time for time served in the county jail."

The court docket entry for this date states:

> "No credit for time served."

The penitentiary mittimus issued by the court stated:

> "No time off for time served in county jail."

The defendant points out that under the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—7(b)) the defendant is entitled to sentence credit for the time he spent in custody for the charges for which he is ultimately convicted. The statute provides in pertinent part:

> "The offender shall be given credit on the maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed."

The defendant therefore states that he is entitled to sentence credit for 1

year, 7 months, 14 days for the time spent in custody prior to his conviction.

■■ The State concurs with the defendant's contention that he is entitled to sentence credit for the time he spent in custody on the instant charges. We agree with both the defendant and the State that the defendant is entitled to sentence credit for the time he spent in custody after he was charged. We therefore order that the case be remanded to the circuit court with instructions to issue an amended mittimus crediting the defendant for the time served pending trial.

■■ The defendant lastly contends that his sentence of 15-20 years for deviate sexual assault is excessive. The defendant argues that this court should exercise its power under Supreme Court Rule 615 (Ill. Rev. Stat. 1973, ch. 110A, par. 615), and reduce the defendant's sentence. In the case at hand the defendant violently assaulted the victim in her place of business, forced her at "gunpoint" into a back room and threatened to kill her if she did not cooperate. Furthermore, the defendant's past history indicates a prior conviction in 1946 on the offense of rape for which he was sentenced to 50 years in the penitentiary. In 1964, while on parole, he was involved in another sex-related offense which resulted in a parole violation and he was returned to prison for four more years. The present events mark the third major sex offense which the defendant has committed and it stands to reason that it cannot be dealt with lightly. We find no abuse of the trial court's discretion in sentencing the defendant to 15-20 years.

Having reviewed all of the above issues, we affirm the conviction of the defendant as to one count of deviate sexual assault and reverse as to the other, with instructions to the trial court to enter judgment and sentencing not inconsistent with this opinion. We further remand the case to the circuit court for issuance of an amended mittimus showing sentence credit for the time defendant spent in custody prior to conviction. All other issues are affirmed.

Judgment affirmed in part; reversed in part and remanded with instructions.

RECHENMACHER, P. J., and NASH, J., concur.