*In re* MICHAEL T. LANE, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* MICHAEL T. LANE, Respondent-Appellant.)

First District (4th Division)    No. 77-545

Opinion filed April 26, 1979.

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan Cherry, and Bryan B. Lavine, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The minor-respondent, Michael Lane, appeals from the judgment of the trial court in which he was found to have violated his probation and was committed to the Department of Correction. Respondent contends: (1) the State failed to prove by a preponderance of the evidence that he

committed the armed robbery which was the basis of his alleged violation of probation; (2) the trial court erred in excluding a defense alibi witness merely because she was misnamed in the list of witnesses submitted to the State; (3) the trial court erred in refusing to grant the respondent a continuance to interview an eyewitness whose existence was first disclosed to respondent during cross-examination of a State witness at trial. We reverse and remand for a new hearing.

Respondent was placed on a one-year probation on December 5, 1974, after having been adjudged a delinquent for the commission of an armed robbery. On September 29, 1975, a supplemental petition was filed charging respondent with armed robbery. The same day both sides filed discovery motions which included a request for the names and addresses of anticipated witnesses; the respondent's motion also requested disclosure of any witnesses "that may be or would be favorable to the defense." Both parties responded to discovery on the day of the hearing, October 14, 1975. One witness was listed by the defense as Glay[1] Phillips, but just prior to trial they informed the court that her last name was Green. The State moved to exclude the witness because she was not listed in respondent's answer to discovery. Defense counsel explained to the court that the witness used both names. Green was her father's name and Phillips was her mother's. When counsel interviewed her she gave him the name Phillips. The court excluded the witness on the ground that her name was not on the list of witnesses.

At the hearing Darnell Parker testified that on September 21, 1975, he was working as a newsboy. At about 11 a.m. that day he was in the vestibule of a building at 4525 South Michigan in Chicago, preparing a bill for delivery to a customer on the first floor, when a boy walked in with a knife and also pulled out a gun. Parker had just rung a customer's bell but when she asked who was there the armed boy ordered him not to say anything and then demanded his money. He had put his gun away, but held the knife on Parker. Parker first refused to turn over any money. But after he argued with the boy for 10 to 15 minutes, he gave him some money and the boy reached in Parker's pocket for the rest and then fled. Parker indicated that the area was lighted and he was face to face with the boy during the robbery. When the police arrived he described the boy as wearing dark pink pants with a blue and brown checked jacket and a dark blue and white hat. He also gave a height estimate, unspecified at trial, and apparently indicated an estimated weight of 185 pounds. He did not describe any of the boy's facial features to the police, nor could he recall any at trial.

On September 28, 1975, at about 9 a.m. Parker was walking past a

---

[1] The witness spelled her first name in the record as Glay; she was also referred to as Day.

building at 3452 South Michigan when the same boy walked by him. Parker summoned the police and accompanied them in a search for the boy. They spotted him once at a gas station but then lost sight of him. At about 9:45 a.m. the police brought Parker to the police station, telling him they had the person who robbed him. At the station he saw the boy again, sitting by himself. The boy at that time was wearing dark pink pants and a black leather jacket. Parker identified the respondent in court as the one who had robbed him.

Officer Charles Johnson testified that on September 28, 1975, Parker informed him that he had seen the person who had robbed him, describing him as a male Negro, 5'6", 160 pounds, with a white hat, black jacket, and pink pants. Johnson saw a man fitting this description running north on 43rd Street. The police chased him, but lost him when he ran in a gangway at 4204 South Michigan. They searched the area and found a male Negro lying underneath a stairway at 4204 South Michigan. He was wearing a black jacket and pink pants and a white hat was found near him. Parker identified this person at the police station as the one who had robbed him. At trial Johnson identified the respondent as the man he had arrested. He denied having told Parker that the man who robbed him was at the police station.

Charles Dilyard, a friend of the respondent, testified for the defense that on September 21 he was in his aunt's apartment at 51st and Federal from 10 a.m. until 5 p.m. The respondent and Glay Green were also there, and respondent never left the apartment during that period. Dilyard could not remember what respondent was wearing because he was "half high" on beer; he testified that he might have had six beers.

Respondent testified that he was at the apartment with Dilyard and Green. He arrived there the evening of September 20 and did not leave until 5 p.m. on September 21. He denied robbing Parker but indicated his belief that another boy, whom he named, had committed the robbery. Respondent also testified that on the 21st and 28th of September he was wearing pink pants and a black jacket.

Respondent's mother testified that her sister lived at 4204 South Michigan, where respondent was arrested.

■■ Respondent's contention is that the testimony of Darnell Parker was highly improbable. Specifically he cites Parker's testimony that he argued with the person who robbed him for 10 to 15 minutes before relinquishing his money, even though the robber was armed with a gun and a knife. Respondent also notes that Parker was unable to describe any of the robber's facial features. When these factors are considered in the light of the allegedly suggestive show-up at the police station, respondent contends that his delinquency was not established by a preponderance of

the evidence. However, respondent's argument is in reality an attack on the credibility of Parker and an affirmation of his own credibility and that of Charles Dilyard. It is the function of the trier of fact, in this instance the trial judge, to determine the credibility of the witnesses. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) A finding of a violation of probation need only be established by a preponderance of the evidence whether a juvenile (Ill. Rev. Stat. 1975, ch. 37, par. 705—3(5)), or an adult (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4(c)), is involved. Under this standard the determination of the trial judge will be reversed only when it is contrary to the manifest weight of the evidence. (*People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721.) The evidence presented by the State in this cause was sufficient, if believed by the trial judge, to establish that respondent violated his probation. We will not substitute our judgment for that of the trial judge merely because respondent's evidence contradicted that of the State.

■ However, respondent also complains of actions by the court which prevented presentation of additional evidence by him. We have noted that the trial court barred the testimony of Glay Green as a sanction for not listing her on the list of witnesses. This sanction is one which the trial court, in the exercise of its discretion, may impose when a party has failed to comply with discovery. (Ill. Rev. Stat. 1975, ch. 110A, par. 415(g)(1).) But it is an extremely harsh action, and an inappropriate use of the sanction may prejudice a defendant and constitute reversible error. (*People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274; *People v. Jackson* (1977), 48 Ill. App. 3d 769, 363 N.E.2d 392.) In *Rayford* it was held to be reversible error for the trial court to exclude a defense witness whose testimony would have tended to show that the State's sole eyewitness could not have had a clear view of an assailant. The court noted that the existence of the witness became known to the defendant only at trial and at that time any surprise to the State could have been cured by allowing a short continuance; thus, exclusion of the witness was excessive. In *Jackson* the defendants, charged with beating a correctional officer, were prevented from calling fellow inmates to testify that they were not involved in the beating. Although these men were not listed by the defendants in their answer to discovery, the reviewing court noted that they were more clearly within the State's control than that of the defendants and found the State was presumed to have knowledge of them. The court also found that it would have been sufficient for the trial court to order a short recess to allow the State to interview the prospective witnesses. Again the extreme measure of excluding the testimony as a sanction was found to be excessive and prejudicial. In *People v. Pugh* (1977), 49 Ill. App. 3d 174, 363 N.E.2d 1212, the use of the

exclusion sanction was held to be unduly harsh under circumstances quite similar to those of this case. There the defense had provided the maiden name of a witness along with her address and telephone number, but her testimony was excluded because in the interim her last name was changed by marriage. The court on review found this to be an abuse of discretion, although it was found to be harmless error because the same testimony had been adduced from another competent witness. In this cause the defense had furnished the State with the address of the witness and the name she had given them. When it was learned that the witness had given her mother's last name instead of her father's the State did not indicate surprise or prejudice, they moved to exclude solely on the basis that discovery was not technically complied with. Nothing in the record suggests any deliberate noncompliance by defense counsel. Reliance on the witness to supply her correct last name was not unreasonable. Under these circumstances the State could have been granted a short continuance or recess for purposes of interviewing the witness, although nothing in the record indicates they even needed to do so. The exclusion sanction was inappropriate as a means of dealing with this technical failure to disclose; its use was an abuse of discretion.

The State contends that the failure of the defense to make an offer of proof concerning the testimony of the witness makes it impossible for this court to speculate on the nature of her testimony and the prejudicial effect of its exclusion. But contrary to the cases cited by the State, in which the reviewing court could not determine with precision the exact nature of the excluded expert testimony (*People v. Hahn* (1976), 39 Ill. App. 3d 969, 350 N.E.2d 839), or was faced with no indication of the nature of the testimony (*People v. Warren* (1975), 32 Ill. App. 3d 218, 336 N.E.2d 557), we have no difficulty in determining the nature of the excluded testimony. Respondent and the one alibi witness he was permitted to present both testified that Glay Green was in the apartment with them on the day of the robbery. This was the entire basis of respondent's defense, that he was in the apartment when the robbery occurred. As we have noted, this case resolved itself into a question of credibility. Although we cannot gauge what impact the testimony of Glay Green may have had, it must be noted that the trial judge specifically indicated he could not rely on the testimony of Charles Dilyard, who admitted being drunk that day. Where the only alibi witness to support respondent's testimony was so clearly discredited, we cannot agree with the State's characterization of Glay Green's prospective testimony as merely cumulative. Barring respondent from using this testimony in his defense was prejudicial and requires reversal of the finding of violation of probation.

Because of our determination of this issue, we need not discuss

respondent's claim that the trial court erred in preventing defense counsel from interviewing a witness whose existence was first revealed at trial and who may have seen the boy who robbed Darnell Parker.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded for further proceedings in conformity with this opinion.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.