THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MELVIN CHATMAN, Defendant-Appellant.

First District (4th Division)    No. 79-2268

Opinion filed March 25, 1982.

ROMITI, J., dissenting.

Ralph Ruebner, Steven Clark, and Susan Bandes, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Rhoda W. Davis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Melvin Chatman, was charged by information with armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). After a jury trial, he was found guilty and sentenced to 18 years imprisonment. The sole issue presented for review is whether the trial court's exclusion of a defense witness constituted an abuse of discretion where defense counsel failed to include the name of that witness in its answer to discovery.

We affirm.

At trial, Hattie Sherry testified that on December 23, 1976, she was a salesperson at Sam's Variety Store. She was working alone behind the counter at 10:30 a.m. A cash register was behind the counter. She was waiting on the only customer in the store when the delivery man and another man, whom she identified as the defendant, entered. The defendant went to the telephone. Sherry gave the delivery man an order for

cakes and when he returned with the cakes, she paid him with cash from a little brown bag kept in back of stock on the shelf behind the counter. Defendant was still at the telephone. Sherry continued talking with a customer when the delivery man left. Then the defendant and the customer left.

A short time later, defendant returned to the store; he asked for and was given change for a quarter. During this conversation, defendant was only 1 foot from Sherry, who looked at his face as she talked with him. Defendant then walked over to the telephone and Sherry went to the soft drink machine and began filling it with quart-size bottles. Defendant walked over to her, stuck a black gun, which was 5 or 6 inches in length, into her side and said that it was a "stickup." He asked Sherry where she kept her gun and she pointed to it near the register. Then defendant asked Sherry where was the "bag of money." She replied there was no bag of money since she had paid the delivery man with the contents from the bag. The witness said defendant then put the gun to her temple and told her he "wasn't playing and would shoot her brains out."

Sherry handed defendant the bag, and upon his demand she opened the cash register. He took money from the register, the gun, her wallet, and another gun. Before he left, defendant again threatened to "blow her brains out" if she stuck her head out of the door.

When police arrived, Sherry described defendant as having a goatee and straggly hair on his cheeks. He was between 5 feet 6 inches and 5 feet 8 inches in height and wore a ski cap, a brown corduroy coat, dark pants, and brown shoes which were run down and unlaced.

Later, Sherry identified defendant from photographs shown to her by police. The man in the photo had a beard, hair on his cheeks, and a mustache. Two days after the photographic identification, Sherry identified defendant in a lineup.

The parties stipulated as to the testimony of the court reporter at defendant's preliminary hearing. Mr. Goirgi, the reporter, would testify, if called, that Sherry stated the defendant had no sideburns but he did have a full beard and mustache "like the public defender," Tod Smith, who was present at the hearing. The court refused the defense request to call Tod Smith because the defense had not listed his name in defendant's answer to discovery.

By stipulation, a dermatologist, A. R. Koransky, would testify, if called, that he had examined Chatman and found the latter incapable of growing more hair than was apparent in the photographs introduced in evidence by the State.

The defense made an offer of proof that Tod Smith was present and available to testify and would state that he was in court when Sherry

testified at the preliminary hearing and that he is the same public defender, Tod Smith, referred to at that hearing. Smith would also testify that his beard is the same now as it was then, reaching from ear to ear, from the lower line of his neck to the top of his cheeks and around the mouth, blending into the sideburns.

At the end of the trial, Chatman was convicted of armed robbery and sentenced to 18 years imprisonment, from which he appeals.

In Illinois, the general rule is that it is within the discretion of the trial court to permit a witness to testify even if the witness was not named as a potential witness in answer to discovery. (*People v. Warren* (1975), 32 Ill. App. 3d 218, 220, 336 N.E.2d 557, 559.) But, that discretion is not reviewable in the absence of a showing of prejudice or surprise (32 Ill. App. 3d 218, 220-21) were the unlisted witness allowed to testify.

Defendant contends he did not realize the testimony of Tod Smith would be important until Sherry, the complaining witness, testified at trial inconsistent with her testimony at the preliminary hearing. At trial, Sherry stated that the offender had a goatee and straggly hair on his cheeks. At the preliminary hearing, she testified that her assailant had a full beard and mustache "like the public defender" at the hearing, Tod Smith. Defendant further contends the trial court's exclusion of Smith's testimony seriously weakened his defense because the jury was deprived of the opportunity of seeing Smith's full beard.

We hold that the trial court's exclusion of Smith's testimony did not constitute an abuse of discretion. Furthermore, no prejudice resulted to defendant because the jury was aware of the inconsistent testimony. The defense attorney cross-examined the complaining witness on her testimony at the preliminary hearing as follows:

"MRS. HUBBARD [defense attorney]: Were you asked this question, and did you give this answer? 'QUESTION: Did the individual have sideburns?' 'ANSWER: No, he had a mustache and beard.'

Were you asked that question and did you give that answer?

MS. SHERRY [complaining witness]: I am thinking about,—I really don't remember that.

MRS. HUBBARD: 'QUESTION: A full beard?' 'ANSWER: Yes.'
Were you asked that question and did you give that answer?

MS. SHERRY: I am thinking back. I really don't remember that.

MRS. HUBBARD: 'QUESTION: A full beard?' 'ANSWER: Yes.'
Were you asked that question and did you give that answer?

MS. SHERRY: Yes, I remember giving that answer.

MRS. HUBBARD: 'QUESTION: And full mustache?' 'ANSWER: Yes.'

Were you asked that question and did you give that answer?

MS. SHERRY: Yes.

MRS. HUBBARD: 'QUESTION: When you say a full beard like the Public Defender here?' 'ANSWER: Yes.'

Were you asked that question and did you give that answer?

MS. SHERRY: I don't remember.

MRS. HUBBARD: Do you recall seeing in that courtroom a bearded person who was pointed out to you?

MS. SHERRY: Yes.

MRS. HUBBARD: Page two, 'QUESTION: He had hair up to the cheek bone?' 'ANSWER: Yes.'

\* \* \*

By MRS. HUBBARD: Were you asked that question as directed and did you give that answer?

MS. SHERRY: Yes.

MRS. HUBBARD: The person with the bushy beard was pointed out in the courtroom, do you recall whether that person was called Tod Smith?

MS. SHERRY: I don't remember the name."

The complaining witness observed the defendant before and during the robbery. She identified him from photographs, at a lineup, and at trial. Her testimony was sufficient to convict defendant. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification. (*People v. Jones* (1975), 60 Ill. 2d 300, 307-08, 325 N.E.2d 601, 605.) Slight discrepancies in description affect only the weight to be given testimony and do not destroy eyewitness credibility. *People v. Gregory* (1976), 43 Ill. App. 3d 1052, 1055, 357 N.E.2d 1251, 1253.

Finally, we note that although the trial court's exclusion of Smith's testimony did not constitute reversible error, the better practice would have been to allow the witness to testify. The court should have granted a recess for the express purpose of allowing the prosecution to interview the witness. (*People v. Mitchell* (1979), 78 Ill. App. 3d 458, 462, 397 N.E.2d 156, 160.) Such an interview would have further reduced the possibility of error. *People v. Mitchell* (1979), 78 Ill. App. 3d 458, 462.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, J., concurs.

JUSTICE ROMITI, dissenting:

I respectfully dissent.

The sole basis for defendant's conviction was the identification testimony of a single State witness, the victim of the crime. Yet the trial court's action precluded defendant from demonstrating to the jury precisely what that witness had meant when in prior sworn testimony she described the man who robbed her as having a "full beard." That term is not a precise one; it is subject to widely varying interpretations. Yet, as the defendant's offer of proof demonstrated, the precluded testimony might have established that the type of beard recalled by the State's witness had dimensions far exceeding any that defendant's expert, a dermatologist, considered possible for defendant to grow. Thus, under these circumstances, it does not suffice to say that slight discrepancies in a description can be discounted on review because they affect only the weight to be given to the testimony by the jury; here the jury was effectively precluded from performing that very weighing function.

Given these facts, I would find that the trial court's exclusion sanction was unduly harsh and so prejudiced the defendant as to require a new trial. *In re Lane* (1979), 71 Ill. App. 3d 576, 390 N.E.2d 82.