THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHELLY MITCHELL, JR., Defendant-Appellant.

First District (4th Division)   No. 78-1319

Opinion filed November 8, 1979.

Thomas P. Cernek, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Following a jury trial before the circuit court of Cook County, defendant, Shelly Mitchell, Jr., was convicted of voluntary manslaughter. (Ill. Rev. Stat. 1973, ch. 38, par. 9—2.) He was sentenced to a determinate term of 7 years imprisonment. Defendant appeals from his conviction and asserts before this court that (1) he was denied his right to fair and impartial trial by the manner in which testimony was elicited from certain prosecution witnesses; (2) the use of a plastic torso by the State's pathologist was improper; (3) the trial court erred in allowing the testimony of an unlisted witness; and (4) the trial court improperly refused defense instructions.

The facts pertinent to this appeal follow. At 7:10 p.m. on March 11, 1975, defendant was exiting his apartment building at 1200 Wentworth Avenue, Chicago Heights, Illinois, when he saw Tyrone Mason approaching with a gun in his hand. Mason was trying to cock the gun but as he got close he struck defendant on the side of the face with it. Defendant retreated to his apartment where he called the police and told them he had just been assaulted. After a brief period, officers Roland Wolff and Gary Miller arrived at defendant's apartment, conducted an interview, and left.

When the police officers had gone, defendant left his apartment to visit friends. He armed himself with a gun. While out of the apartment, defendant was informed that Tyrone Mason was in the East Winds Lounge at 290 East 14th Street. Defendant testified he called the police from a telephone at 14th and Lincoln Avenue and told them he had been informed that Mason had a gun and was in the lounge at that time. The police agreed to answer the call, and officers Wolff and Miller were dispatched.

After making the call to the police department, defendant drove his car to 1317 Portland Avenue and parked. Not far from where he parked the car, defendant held a conversation with Sharon Alexander and her aunt, Shirleen Alexander. The women asked about the bruised condition of his face, and defendant told them he had been struck by Tyrone Mason. The conversation ended and defendant made his way to 14th Street. There, he watched, unnoticed, as officers Wolff and Miller arrived at the East Winds Lounge. Defendant testified that he waited until the officers had made their inspection of the lounge, and then he walked around aimlessly for a short time before returning to 14th Street.

Defendant held a brief conversation with Von Coldman and Melvin McDowell who were sitting in a parked car on 14th Street across from the lounge. After the conversation had ended, defendant entered the lounge and took a position at the bar. He was about 2 feet from the doorway when Tyrone Mason appeared. Defendant to Mason, "Don't we have

something to talk about?" Mason made no reply but began to shake his head and raise his hands, chest high. Defendant testified that when he saw Mason raising his hands he thought Mason was reaching for a gun. Defendant then pulled his gun and started shooting in the direction of Mason. Both ran out of the lounge into the street, the defendant shooting Mason several times. After the last shot was fired, Mason ran away from the lounge and later succumbed to his wounds. No gun was ever found on Mason. Defendant did not pursue Mason; instead, he returned to his car and drove home. It was not until 6 a.m. the next day when defendant learned, over the radio, that Mason was dead. He then called the police and surrendered.

Trial was held on January 4, 1978. The State called Louise Alexander who testified she was the mother of five children, the eldest of whom was Tyrone Mason. She was at the scene of the shooting on March 11, 1975, and saw her son lying in the street at 14th and Portland Avenue. The defense made no objection to Louise Alexander's testimony.

Twylar Jones testified that she was an acquaintance of the victim, and that on the night of March 11, 1975, she was at the East Winds Lounge. She further testified that she saw defendant shoot Mason but did not see any gun or weapon in Mason's hand or on his person. At two points in her testimony, where she discussed the condition of the victim's wounded body, Twylar Jones lost her composure. On both occasions the court granted recess for the sake of the witness.

The State also called as its witness Dr. Tae An, a pathologist employed by the medical examiner's office. Prior to Dr. An's testimony, the State produced a plastic model of what appeared to be a male upper torso. The torso model had no arms or head. The State offered the plastic torso as People's Exhibit No. 9, over objection by the defense. The plastic torso was used in testimony of the pathologist as to the cause of death.

Testimony was offered by Shirleen Alexander, another State's witness. The defense objected because her name and address had not been made available prior to trial in response to defendant's motion for a list of witnesses. Following a side bar conference, the defense was allowed to interview the witness and the objection was overruled.

■■■ Defendant contends that the manner in which testimony was elicited from certain prosecution witnesses was highly inflammatory and prejudicial. Defendant specifically refers to the testimony of the decedent's mother, Louise Alexander, and that of Twylar Jones. Both testified to seeing the decedent lying in the street prior to his death. Louise Alexander testified to being the decedent's mother. The general principle is that counsel may not do or say anything in argument, the only effect of which will be to inflame the passion or arouse the prejudice of the jury against the defendant, without throwing any light on the question for decision. (*People v. Glickman* (1960), 27 Ill. App. 2d 379, 385, 169 N.E.2d

815, 818.) The appropriate test for review is whether the challenged evidence so inflamed the passions of the jury as to sway them from a rational evaluation of the facts in issue. (*People v. Lecompte* (1972), 5 Ill. App. 3d 616, 620, 283 N.E.2d 705, 708.) In review of the record, we are unable to characterize the testimony challenged by defendant as either inflammatory or prejudicial. Both witnesses were at the scene of the shooting, and each witness corroborated the testimony of the other, thus, illuminating the facts in question.

■■ With respect to the testimony of the decedent's mother, it is unreasonable, in our opinion, to expect she would testify without revealing her relationship to the decedent and stating he had siblings. It has been established by this court that when evidence of a victim's family appears incidently in the trial or is the subject of comment by the prosecution, automatic reversal is not mandated. The materiality of the testimony or comments and the manner of its presentation must be considered. (*People v. Hyde* (1971), 1 Ill. App. 3d 831, 840, 275 N.E.2d 239, 245.) The prosecution made no attempt to dwell upon or draw out testimony regarding the deceased's family. We find no reversible error.

Defendant takes issue with the use of a plastic torso model as demonstrative evidence. The argument advanced by defendant is that the presence of the lifelike replica of a human being improperly influenced the jury in its deliberations and denied him a fair trial. While we recognize that the probative value of the subject model is limited, the propriety of receiving such demonstrative evidence rests primarily within the discretion of the trial court and absent a showing of prejudice to the defendant the admittance of such evidence is not error. (*People v. Fair* (1977), 45 Ill. App. 3d 301, 305, 359 N.E.2d 848, 851; *People v. Navis* (1974), 24 Ill. App. 3d 842, 848, 321 N.E.2d 500, 505; *People v. Smith* (1974), 17 Ill. App. 3d 494, 497, 308 N.E.2d 257, 260.) No prejudice is established by defendant's arguments or the record.

■■ This court recognizes that demonstrative evidence may be helpful to pathologists in testifying as to the cause of death. We point to our decision in *People v. Henenberg* (1973), 55 Ill. 2d 5, 14, 302 N.E.2d 27, 32. That case involved an appeal from a murder conviction. At trial the pathologist used a model of a human skull together with a colored slide of the deceased's skull to show the cause of death. The court in *Henenberg* ruled that:

> "The demonstration was a useful adjunct to the testimony of the pathologist as to the cause of death, because it enabled him to explain more clearly what was shown in the photographs [slides]."

In the case before us, we find that Dr. An's reference to the plastic torso was a useful adjunct to his testimony establishing the cause of death. He made indications on his own body as to the entrance and exit of

bullets. He then made similar indications on the plastic torso. The jurors had the opportunity to more easily understand the doctor's testimony due to the presence of the model. That result would make the model a useful adjunct to testimony and would support its use in trial.

■ On review of defendant's challenge to testimony of an unlisted witness, we are not moved from what has become the well-established rule. The allowance of testimony by an unlisted witness is at the discretion of the trial court, and on review the determination will not be disturbed unless defendant shows surprise or prejudice. (*People v. Weisberg* (1947), 396 Ill. 412, 420, 71 N.E.2d 671, 676; *People v. Anderson* (1977), 46 Ill. App. 3d 607, 615, 360 N.E.2d 1371, 1376; *People v. Gamble* (1976), 41 Ill. App. 3d 394, 403, 353 N.E.2d 136, 144.) The record is clear in showing that the objection to the testimony of Shirleen Alexander as an unlisted witness was not made until her second day on the witness stand. At that time, a recess was granted for the express purpose of allowing the defense to interview the witness. Such a mid-trial interview further reduced the possibility of error. (See *People v. Knox* (1968), 94 Ill. App. 2d 36, 42, 236 N.E.2d 384, 387.) We find no abuse of discretion in the action of the trial court and, therefore, no error.

The final issue before us concerns the trial court's refusal of defendant's instructions No. 6 and No. 7. The instructions related to self-defense but did not originate in IPI Criminal. Supreme Court Rule 451 (Ill. Rev. Stat. 1973, ch. 110A, par. 451), in applicable part, provides:

> "(a) *Use of IPI-Criminal Instructions; Requirements of Other Instructions.* Whenever Illinois Pattern Instructions in Criminal Cases (IPI-Criminal) contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI-Criminal instruction shall be used, unless the court determines that it does not accurately state the law."

The IPI Criminal instruction given by the trial court on self-defense (Illinois Pattern Jury Instructions, Criminal, No. 24.06 (1968)) clearly, concisely, and impartially states the law and is the instruction which is required to be given under Rule 451.

In considering the adequacy of instructions, a reviewing court must take all of the instructions as a unit to ascertain whether they fully and fairly cover the law. (*People v. St. Pierre* (1975), 25 Ill. App. 3d 644, 650, 324 N.E.2d 226, 230.) The instructions chosen in this case, taken as a whole, fully state the law relating to the respective theories of defendant and prosecution. They were properly given. We find no error in the court's refusal to give the non-IPI Criminal instructions tendered by the defense.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

JIGANTI, P. J., and LINN, J., concur.