STATE of Maine

v.

Philip DUBE.

Supreme Judicial Court of Maine.

Argued Jan. 22, 1987.
Decided March 19, 1987.

David W. Crook (orally), Dist. Atty., Alan P. Kelley, Asst. Dist. Atty., Augusta, for plaintiff.

Lang, Johnson, Bowie & Boutin, Daniel W. Boutin (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Philip Dube appeals from his convictions by a jury in Superior Court (Kennebec County) for rape, 17–A M.R.S.A. § 252 (1983), gross sexual misconduct, 17–A M.R.S.A. § 253 (1983), and aggravated assault, 17–A M.R.S.A. § 208 (1983). Only one of defendant's points on appeal merits discussion. He contends that alleged improprieties committed by the District Attorney in his conduct of the State's case deprived defendant of a fair trial. Although we disapprove of some aspects of the District Attorney's trial performance and warn against their repetition, we find no error of such magnitude as to mandate in this case our setting aside of the guilty verdict rendered by the jury. Accordingly, we affirm.

The sexual encounter from which these convictions arose was described as follows by the prosecutrix at trial. On the evening of Saturday, March 30, 1985, defendant Dube (then 32 years of age) and the prosecutrix (a woman some 16 years older than Dube) met at the Ruby Lounge in Fairfield. The woman engaged Dube in conversation to console him upon the recent death of his mother, who had been a church acquaintance of the prosecutrix. Sometime after 11:00 p.m., concerned as to Dube's capacity to drive, the prosecutrix, who had drunk nothing alcoholic, took him in her car to his apartment in Waterville. At his invitation, she accompanied him into the apartment to have coffee and cake and to talk further about the loss of his mother. As the prosecutrix prepared to leave after the refreshments and conversation, Dube seized her by the throat, saying, "You scream and I will kill you." There followed a physical struggle between the couple, with Dube knocking the woman to the floor, placing his knee into her ribs, and punching her in the face and ribs numerous times. Dube succeeded in forcing her to take off her clothes, to go to the bedroom, and to have intercourse and oral sex. He let her leave at about 1:00 a.m., warning her not to call the police that night. The prosecutrix, only partially dressed, drove directly to a nearby pizza store that was still open. There she asked someone to call the police.

Officer Dana Johnson, who responded to her call at 1:38 a.m., took the prosecutrix to Mid-Maine Medical Center. There the examining physician, Dr. Britton, found that she "was fairly disheveled and looked like she had been beaten up and was somewhat distraught"; he observed bruises upon her face, neck, and shoulders. X–rays revealed that she had a broken rib. At trial Dr. Britton gave his medical opinion that the prosecutrix's neck bruises were caused by someone's having choked her. Dr. Britton also took photographs of the visible injuries of the prosecutrix, which were presented to the jury at trial. Mrs. Shapiro, a victim witness advocate who attended the prosecutrix at the hospital, also testified to her condition, which included difficulty in breathing, an aching side, coughing and spitting up a lot of bloody phlegm, and hysterical crying. Two residents in Dube's apartment building testified to being awakened by the noise of a "loud argument" coming from Dube's apartment at about the time identified by the prosecutrix's testimony. When Officer Johnson went to Dube's apartment to arrest him, he found Dube in the same naked state in which the prosecutrix said she had left him.

Dube testified as the final witness at trial and told a very different story. He claimed that the prosecutrix consented to, and even promoted, their sexual involvement; that she injured herself when she fell over a hassock as she entered Dube's dark apartment with him; and that just as he was having sexual intercourse with her in his bedroom, she "freaked out" and started to scream when he told her that he had herpes. Thereupon, Dube testified, he grabbed her by the throat to keep her from screaming and causing him trouble with his neighbors, and then ordered her out of his apartment.

I. *Standards of Appellate Review*

Dube's appellate counsel urges us to vacate his convictions for rape, gross sexual misconduct, and aggravated assault because of a number of alleged improprieties committed by the District Attorney in his conduct of the State's case against Dube. Those improprieties fall into three general

categories: (1) allegedly improper closing argument, (2) allegedly improper cross-examination of Dube, and (3) allegedly improper conduct of direct examination of the State's own witnesses. For the reasons set forth hereafter, we find no *reversible* error in any of defendant's catalogue of appellate complaints against the District Attorney. As to many items of that catalogue, there was no error at all, and our analysis ends there. As to some other items, we do find that there was error. Certain of those errors defendant by trial objection preserved for appellate review; others he did not preserve for review. Thus, we examine some of those items of error by a harmless-error standard and the balance on the more demanding obvious-error standard.

■ Either standard of appellate review calls upon us, as one part of our analysis, to assess as best we can whether the error under consideration affected the jury's verdict. We will not set aside the judgment because of trial error, even though preserved, if "it meets the customary harmless-error standard that the 'conviction is sure that the error did not influence the jury, or [that it] had but very slight effect.'" *State v. Conner*, 434 A.2d 509, 514 (Me.1981) (quoting *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976)). *See also State v. True*, 438 A.2d 460, 467 (Me.1981) (quoting Chief Justice Traynor in characterizing preserved error as harmless if "the appellate court believes it highly probable that the error did not affect the judgment").

The obvious-error standard for determining whether error, though not preserved in the trial level, requires the trial court's judgment to be set aside involves as one step a similar analysis of the consequences of that error. Under that standard, as we explicated it in *State v. True*, 438 A.2d at 467–69, an appellant to prevail must demonstrate that he suffered a significantly higher level of prejudice from an unpreserved error than that required by the harmless-error standard. To be "obvious" error, it must be "so highly prejudicial and [must] so taint[] the proceedings as virtually to deprive the aggrieved party of a fair trial." *Id.* at 468 (quoting *State v. Langley*, 242 A.2d 688, 690 (Me.1968)).

In the case at bar, even though the jury did accept Dube's "social companion" defense, 17–A M.R.S.A. §§ 252(3), 253(4), the State's evidence was strong on the only real issue in contest: Were the sex acts consensual or compelled? As the last witness at his trial, Dube admitted that he indeed had had oral sex and intercourse with the prosecutrix and further that he indeed had choked her neck "real hard." As a practical matter those admissions left the compulsion element as the sole fact question to be resolved by the jury. The prosecutrix's broken rib and other serious injuries and the testimony of Dube's neighbors, along with the incredibility of Dube's tale of the prosecutrix's having received her multiple injuries by falling over a hassock, strongly tend to confirm the prosecutrix's recitation of the facts.

## II. *Closing Argument*

■ In the District Attorney's closing argument to the jury, he pointed out three facts tending to contradict Dube's claim that he told the prosecutrix about his herpes as they were having sexual intercourse. First, the District Attorney noted that nothing whatever appears in the patient history taken at the hospital emergency room immediately after the sexual episode to show any suspicion on the prosecutrix's part that she had just been exposed to herpes. Second, on Dube's arrest his one and only statement to Officer Johnson was: "This woman I supposedly raped, ... well you better have her checked for herpes because I have herpes. I have open sores all over my dink." If Dube's testimony was true, that second warning to the prosecutrix through Officer Johnson would have been unnecessary, the District Attorney suggested. Third, the District Attorney argued:

The nurse [at the emergency room] comes over [to the prosecutrix] with that communication from Dana Johnson, you better have her checked for herpes. All right. Even though she had been slowly calming down[,] when that came in she

had a visible reaction and start[ed] rocking back and forth and again basically went back into hysterics again.

As to the third argument, defense counsel promptly moved for a mistrial on the ground that the content of the message transmitted from Officer Johnson to the prosecutrix at the emergency room of the hospital (namely, that "you better have her checked for herpes") had been excluded from evidence by the presiding justice as hearsay.[1] The justice denied defense counsel's motion for a mistrial, instead instructing the jury to disregard the third argument; and on appeal defendant contends that the justice's action constituted reversible error. We disagree.

■ Broad discretion is accorded to the exercise of judgment by the trial judge in deciding whether the circumstances at the time of the motion necessitate the declaration of a mistrial, instead of resorting to the less drastic action of giving a curative instruction. *See State v. Hinds*, 485 A.2d 231, 235 (Me.1984). "Only where there are exceptionally prejudicial circumstances or prosecutorial bad faith will a curative instruction be deemed inadequate to eliminate the prejudice." *State v. Hilton*, 431 A.2d 1296, 1302 (Me.1981). In the circumstances of the present case, including the inferences that the jury could draw from evidence that went in without objection, the presiding justice did not exceed the scope of his allowable discretion in acting as he did on defendant's motion for a mistrial.

■ Dube assigns as error for the first time on appeal the District Attorney's reference during final argument to Mrs. Shapiro, the victim witness advocate: "I think this is a very good witness." That comment must be reviewed under the obvious-

error standard. In improperly asserting his personal opinion of Mrs. Shapiro's credibility, the District Attorney was attempting to bolster only his argument that, as testified by Mrs. Shapiro and no one else, the prosecutrix had received a "fat lip" in addition to her other injuries. The fat lip was a collateral matter. Therefore, though the District Attorney's statement was improper, we cannot see any possibility that it affected the jury's ultimate determination. We find no obvious error.

### III. *Cross-Examination of Defendant Dube*

Defense counsel also moved for a mistrial at the end of the District Attorney's cross-examination of Dube, arguing that

> the accumulative effect of the series of obviously improper and objectionable questions asked by the District Attorney along with the badgering of Mr. Dube during his cross-examination amounts to a trial by innuendo; and I think it has been extremely prejudicial and most of the questions have been, obviously, objectionable.
>
> For that reason I think he has been denied a fair and impartial trial and that the jury has been unduly and unfairly inflamed.

The presiding justice denied that motion. Dube contends on appeal that the denial of that motion was error.

As a preliminary matter, whether Dube preserved for review the alleged errors by the District Attorney during his lengthy cross-examination of Dube is doubtful, because Dube's trial counsel failed in most instances to make any specific and contemporaneous objection to the alleged errors now focused upon by appellate counsel.[2]

---

1. The presiding justice was wrong in his original ruling that the evidence of the content of the message received by the prosecutrix was inadmissible hearsay. That content was *not* hearsay for the specifically identified purpose for which its proponent, the State, was offering it; namely, the state of the prosecutrix's mind when, as shown by evidence admitted without objection, she went into hysterics upon hearing the message. The State offered that evidence merely to show that the prosecutrix was put on notice that someone thought she might have contracted

herpes from Dube. It was irrelevant whether Dube in truth had herpes. By the definition set forth in M.R.Evid. 801(c), testimony of the notice given to the prosecutrix was not hearsay. *See State v. Dutremble*, 392 A.2d 42, 46 (Me. 1978).

2. The defense attorney did object to the argumentative form of certain questions posed by the State's attorney during cross-examination of Dube.

*See State v. Libby,* 435 A.2d 1075, 1078 (Me.1981). Trial counsel's failure to object specifically to many of the alleged errors at the time they supposedly were made deprived the presiding justice of the opportunity to eliminate or minimize any prejudicial effect with curative instructions or other appropriate measures. However, because the presiding justice considered on its merits the motion for mistrial made by defense counsel at the end of the Dube cross-examination, we will review his denial of that motion for any error in that ruling. *Id.*

The presiding justice did not exceed the broad scope of the discretion an appellate court must accord to him in recognition of the advantages enjoyed by a trial judge in assessing the effect of alleged errors at trial. "The presiding justice is in a better position than the reviewing court to gauge the impact of the objectionable testimony." *State v. Hilton,* 431 A.2d at 1302; *see also State v. Dana,* 406 A.2d 83, 86 (Me.1979). Because defense counsel's motion for a mistrial did not focus the presiding justice's attention on specific instances of alleged objectionable conduct in the District Attorney's cross-examination of Dube, the presiding justice had to rule on the basis of the impact of that cross-examination as a whole. The presiding justice concluded that the "court hasn't observed anything that amounts for grounds of [sic] a mistrial" and that the District Attorney's questioning was not "prejudicial in the sense required." When we examine the cold transcript of the District Attorney's cross-examination of Dube, we cannot conclude that the alleged improprieties now pointed to by Dube's appellate counsel mandate an opposite conclusion. We are not persuaded that "there are [the] exceptionally prejudicial circumstances or [the] prosecutorial bad faith" necessary to justify an appellate court's overruling the trial judge's exercise of judgment on a motion for a mistrial. *State v. Hilton,* 431 A.2d at 1302.

■ Specifically, Dube contends on appeal that several different areas of the District Attorney's cross-examination were unfairly prejudicial. Dube asserts that the District Attorney through his questions improperly tried to picture Dube as an alcoholic and as one who engages in casual sex. Evidence that Dube was an alcoholic was not admissible. *See* M.R.Evid. 404. Defense counsel successfully objected to questions posed by the District Attorney whether Dube thought he had "an alcohol problem." Even if the District Attorney's questions merely by being asked served to suggest to the jury that Dube did have an alcohol problem, that suggestion was harmless error. By Dube's own admission he drank a large quantity of alcohol in the hours before the events in question: whether he did so because he acted in conformity with a character trait for alcoholism rather than for some other reason could have had "but very slight effect" if any at all upon the jury. *State v. Conner,* 434 A.2d at 514. The State's questions regarding whether it was usual for defendant to have sex with women so soon after meeting them, far from an attempt to show that on the night in question he had acted in conformity with his past sexual practices, were an attack upon the credibility of defendant's version of the events of that night, namely, that the prosecutrix wanted to have intercourse with him less than an hour and a half after meeting him at the Ruby Lounge.

■ The District Attorney's facetious questioning, which Dube contends was prejudicial, regarding Dube's story of oral sex in the Ruby Lounge parking lot was properly based upon, and was similarly designed to question the credibility of, Dube's claim that the whole sexual encounter was consensual. The District Attorney's cross-examination of Dube is evaluated *not* for mere prejudice, but for *unfair* prejudice. "Unfair prejudice" means "an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." Field & Murray, *Maine Evidence* § 403.1 at 59 (1976). The District Attorney could properly use any element of the testimony Dube gave on direct to discredit during cross-examination Dube's attempted justification for the oral sex and intercourse that he admitted having had with the prosecutrix. *See* M.R.

Evid. 611(b). Dube's assertion that the prosecutrix was the sexual aggressor also provided the State's attorney with a proper basis to attempt to demonstrate the incredibility of that assertion by characterizing the prosecutrix as a mother of five, a grandmother of six, and "almost old enough to be [Dube's] mother." The fact that such characterization, as Dube contends, could possibly have inflamed the prejudices of the jury did not make it impermissible. A question is not impermissible merely because it is inflammatory. *See State v. Graves*, 224 A.2d 57, 60–61 (Me. 1966). "If a question is proper in form and substance, a prosecuting attorney is free to persist in his inquiry...." *State v. Moore*, 377 A.2d 1365, 1366 (Me.1977).

 The District Attorney improperly remarked, after Dube testified as to the amount of alcohol Dube had consumed, "I probably would have been on my butt by now," thus offering his own testimony as to the effect of that much alcohol. *See* M.R.Crim.P. 26(d); M.Bar R. 3.7(e)(2)(iv). However, we find that remark harmless error. The jurors were surely able to evaluate for themselves from their collective experience and from the testimony of the witnesses the probable effect of the alcohol consumed by Dube. Furthermore, Dube's degree of inebriation was at best a collateral issue; the State's evidence of the nonconsensual nature of Dube's physical and sexual assault upon the prosecutrix was strong enough to make it highly probable that any error on that collateral issue did not affect the jury's verdict.

### IV. Direct Examination of the State's Witnesses

In his post-verdict motion for a new trial, Dube argued for the first time that the District Attorney's conduct of the direct examination of the State's witnesses was improper and prejudicial.[3] As we said in *State v. Greene*, 512 A.2d 330, 334 (Me. 1986):

At no time did the defendant move for a mistrial or otherwise protest that the

[District Attorney's] remarks denied him a fair trial. By such inaction the defendant has failed to preserve the claimed errors since he must be taken to have acquiesced in the measures adopted by the trial justice. Accordingly, we review under the obvious error standard.

Matters reviewed only for obvious error "will not be accorded a more detailed review merely because they were ultimately presented to the trial court in a motion for a new trial." 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 33.4 at 33–11 (1985). The alleged improprieties constitute a basis for vacating the judgment only if they caused that high degree of prejudice defined by the *True* standard of obvious error we have previously discussed. *State v. True*, 438 A.2d at 468–69. *See State v. Hebert*, 480 A.2d 742, 750 (Me.1984) ("manifest injustice"). On applying that standard to the alleged improprieties in handling the State's direct case, we cannot find any obvious error.

 Dube contends that the District Attorney's use of leading questions in his examination of the prosecutrix deprived him of a fair trial. However, defense counsel had requested that during that examination the "questions be phrased so that the answers [will] be given without a long narrative." Even if we disregard the fact that many of the leading questions constituted invited error, we cannot conclude that those leading questions deprived defendant of a fair trial; there is no suggestion that the content of the prosecutrix's testimony would have been any different had the questions been nonleading.

 On appeal Dube also contends that on several occasions the District Attorney phrased his questions in a way that was inflammatory and highly prejudicial. Dube claims the District Attorney inflamed the jury by referring to the prosecutrix as a rape victim. The District Attorney's use of that shorthand was harmless error. The jury was aware from the indictment that the prosecutrix had accused Dube of rape. Furthermore, the State's attorney used the

---

3. Defense counsel objected at trial, for other reasons, to some of the present claimed improprieties, but did not request a mistrial or otherwise represent to the presiding justice that, whatever his ruling, the conduct jeopardized Dube's right to a fair trial.

terms "rape" and "rape victim" only in questioning two police officers who testified that they had acted on the night in question in a manner that indicated they had concluded the prosecutrix had been raped. "Even if an improper comment is made by a [lawyer for the State], reversal of the judgment of conviction, however, is warranted only upon a showing of substantial prejudice to the defendant." *State v. Bernier*, 486 A.2d 147, 149 (Me.1985). Contrary to defendant's appellate contentions, the District Attorney's question of the prosecutrix whether the "Lord answered her prayers" to be freed was a permissible reference to her prior testimony about her state of mind (namely, that she had fallen back on prayer for deliverance), which was relevant to the compulsion element of rape and gross sexual misconduct. *See State v. Graves*, 224 A.2d at 60–61. Dube also now claims the District Attorney inflamed the jury by asking the arresting officer whether Dube was "that nicely dressed that night." That question was promptly withdrawn before it was answered. In any event, its apparent sarcasm, though unbecoming, could have had little consequence in the trial. Dube fails to convince us that "the obviousness of the error [in those allegedly inflammatorily framed questions] and the seriousness of the injustice done to the defendant thereby are so great that the Law Court cannot in good conscience let the conviction stand." *State v. True*, 438 A.2d at 469.

▮ Dube contends that he was deprived of a fair trial by the District Attorney's personal involvement in the presentation of evidence. During the State's direct examination of Dr. John Britton, the prosecutrix's examining physician, the doctor at the District Attorney's request gripped the attorney's neck with that degree of force the doctor estimated would be required to cause bruises such as those displayed by the prosecutrix at the hospital emergency room. As Dr. Britton did so, the District Attorney commented on his feelings and noted that the doctor had produced no red marks. We cannot conclude that that attorney's conduct deprived Dube of a fair trial. Although such personal involvement in giving testimony was improper, the Dis-

trict Attorney's theatrics brought out nothing more than what Dube admitted in his own testimony; namely, that he had grabbed her "real hard," and that "[a]s far as leaving bruises on her neck, I probably did."

Dube's motion for new trial required the presiding justice to assess the consequences of the District Attorney's alleged misconduct. The justice's presence throughout the trial afforded him a unique and advantageous perspective in evaluating any prejudicial effect of that conduct upon defendant. Accordingly, we must allow the presiding justice broad discretion in determining whether to grant the new trial. *Isaacson v. Husson College*, 332 A.2d 757, 764 (Me.1975). His determination that Dube was not deprived of a fair trial by the alleged misconduct of the State's attorney fell within the allowable scope of his discretion.

### V. *Conclusion*

No one should take our present affirmance as an endorsement of all aspects of the District Attorney's conduct now attacked by Dube's appellate counsel. Our affirmance means only that we find nothing in that conduct, when examined under the established rules of appellate review, that vitiates the validity and basic fairness of the jury's verdict declaring Dube guilty as charged. It means only that setting aside Dube's convictions in these circumstances is too high a price for the public to pay for improprieties committed by the District Attorney during the trial.

It is as much the District Attorney's duty "to see that the accused has a fair trial as it is to bring about a just conviction of the guilty." *State v. Wyman*, 270 A.2d 460, 463 (Me.1970). The District Attorney had a strong case against Dube. Much of the questionable conduct that Dube's appellate counsel now focuses upon constituted prosecutorial overkill. We noted in *State v. Conner*, 434 A.2d at 513–14:

The prosecutor, as counsel for the public interest, is especially bound by the tenets of sound professional judgment, based upon a thorough knowledge of the law, to avoid jeopardizing *without reason or need* the validity of a just conviction. It

is the logical culmination of all of these considerations that high risk-taking by the prosecutor ... at trial may well violate the higher standards of professional trial competence and subvert the public interest in the proper performance of the prosecutor's function.

(Emphasis in original). Particularly in this case, in view of the strong evidence available to him, the District Attorney had no reason or need to jeopardize the validity of a just conviction by engaging in high-risk tactics.

The entry is:

Judgments of conviction affirmed.